[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution brought by the plaintiff husband against the defendant wife. The parties were married May 2, 1970 in Fairfield, Connecticut. There are two minor children issue of the marriage, Sarah Perham born June 18, 1978 and Laura Perham born March 2, 1982.
Neither party has been a recipient of public assistance from any local, state or federal government. The plaintiff has resided in Connecticut for one year next preceding the date of the filing of this complaint.
The marriage has broken down irretrievably with no hope of reconciliation.
The plaintiff was born on March 11, 1947 and the defendant on June 17, 1951. This is a first marriage for both parties and both completed high school. Both appear in good health.
This is a case where the plaintiff wife put up with what she described as lack of communication, lack of intimacy, lack of CT Page 8701 any real relationship for some twenty years and then decided, after four years of counseling, that she had had enough and did not want to go back to counseling or to be married to her husband.
The husband says that he loves his wife and actually brought the divorce in order to make her happy. He even attempted to withdraw the action at one point, but by that time; the defendant had filed a counterclaim so the action proceeded.
It appears that both parties have had a great deal of trouble communicating. The plaintiff wife claimed that the husband worked too long or was out of the home most of the time, either working or playing golf. He made no rejoinder to this at all about playing golf. He did claim that he worked long hours and even had a second job at times.
The husband also appears to have kept all the information about his finances to himself. He says he cashed his check and put money into a jar in the home to pay for the household expenses or into a joint savings account or a joint checking account. It was never clear whether he put all of it in any of them or in all of them. It is doubtful that it was all put in any of these because there was no evidence of any expenditures from checks. In addition, the wife's testimony was that she did not know how much her husband earned, never saw his paycheck except when they signed the income tax returns and then found that his income was half to two thirds more than she had access to.
There was also evidence that several hundred dollar bills were found by the daughters in the plaintiff's car in the last couple of years. He claims that that was money he earned from a part time job and that he was using it to pay educational expenses for the children at parochial schools and to repay a loan to his employer.
The defendant also claimed that there was no social life, and the plaintiff seemed to agree to that saying it was after they went to counseling that he suggested they go away for a weekend. Before that, he knew they went out to dinner sometimes. Their vacations were always in Michigan where the rest of the defendant's family lives.
It does appear that both of them have somewhat similar ideas about their roles in marriage. The husband apparently believed that all he had to do was supply the income, and the wife CT Page 8702 believed it was her duty to take care of the home and the children and to follow her husband's dictates. When the defendant finally began to feel she was being controlled financially and denigrated by her husband's deprecation of her skills at crafts and when the money, which he was giving her for household expenses was barely enough to meet those expenses with very little left over for anything else like her personal needs, she became very concerned. However, she kept trying because she said she had married for life and thought her religion condemned divorce.
While the husband appears to have acknowledged his mistake in concentrating on his work and not having time for his family, he did not seem to have much sensitivity about his wife's need for support of her skills. In fact, he seems to have influenced her on that score to the extent that she now feels she has no marketable skills — a position with which the court disagrees.
Given that total picture, the court finds that neither one is primarily at fault and that this is, therefore, a no fault divorce.
The parties have agreed that they shall have joint legal custody of the minor children and the children shall make their primary residence with the defendant. The husband shall have reasonable and liberal visitation as agreed upon by the parties. The court finds this to be in the best interests of the children.
The unanswered questions are the amount of alimony and support and the distribution of the parties' assets.
On the question of support, both parties have submitted recommendations for the amount of support to be paid using the Child Support Guidelines. While the plaintiff submitted three such recommendations based on varying amounts of income of the plaintiff, the defendant's only recommendation agrees with the plaintiff's first recommendation, that is, support in the amount of $387.00 as the amount to be paid by the plaintiff to the defendant. There appears to be no reason not to apply the Child Support Guidelines.
It appears to the court that it is not possible for the defendant to maintain the expenses she lists on her affidavit, which includes maintenance of the marital home which she is seeking to have transferred to her, without some additional $500.00 in CT Page 8703 alimony. This is obviously not appropriate nor sustainable since it would take all of the plaintiff's income to do that.
The court has considered the problem of maintaining the home in connection with the distribution of all of the assets. The evidence did show that both parties had contributed equally to the acquisition and the maintenance of the assets in that the defendant had worked before the first child was born and her earnings were used along with that of the plaintiff for their first house. Thereafter, she took care of the children and the house in accordance with her husband's wishes thus enabling him to pursue his work to an inordinate degree, which undoubtedly led to the acquisition of the other assets.
At the present time she is working at a part time job earning $6.00 an hour for 15 to 20 hours a week. She testified that she had sought employment for over two years and this was all she could find.
While the defendant appears to believe that she does not have any marketable skills, the court believes otherwise given the evidence of the rolltop desk which she constructed which appeared to be an example of a top grade of craftsmanship. She also worked as a dental assistant before her marriage, and while she may need additional skills, as she testified, in the computer field in order to obtain such a position now, she should be given the opportunity to do that. That means that alimony ought to be sufficient to enable her to get further training, either in the dental assistant field or in woodworking or whatever other field she feels she can qualify with a modest degree of training. On the other hand, it is not likely that she is going to be able to earn anywhere near what her husband has earned, given her absence from the employment market and the fact that she will have two children to care for.
The husband's income is less easy to establish. The parties apparently used the 1992 W2's for the purpose of establishing his income for support purposes. However, the court finds that in addition to the income which he has earned in 1992 he apparently had some other income which was not reported given the evidence of several hundred dollar bills found in the station wagon by his daughters. Moreover, it is clear that he has much more opportunity to obtain additional assets than the plaintiff given his work habits and his skills as a printer.
In addition to considering all of the factors enumerated CT Page 8704 in Connecticut General Statutes 46b-81 and 46b-82, the court also has considered the fact that the defendant will be living in the house with the two children and that the amount of alimony, which the court could reasonably award, would not enable her to pay the expenses of the maintenance of that house given her present income. The court therefore makes the following findings and orders:
1. The marriage has broken down irretrievably and there is no hope of reconciliation. It is, therefore, dissolved.
ALIMONY
2. The plaintiff will pay the defendant $125.00 a week and also pay forty-five (45%) of the expenses of the house (amounting to $305.00 a week as set forth in the defendant's affidavit) or $137.25 a week for a total of 262.25. This latter payment to last only until the house is sold. The initial payment of $125.00 a week is to remain until the wife dies, cohabits or remarries.
DISTRIBUTION OF THE ASSETS
While the court believes that both houses should be sold as soon as possible, neither party appears either anxious or willing to do that given the state of the present housing market. The court will consequently order the following:
3. The defendant shall have exclusive possession of the marital home and the plaintiff shall vacate it not more than sixty (60) days after the date of filing of this decision.
4. The parties shall remain as joint tenants of the marital home on Shagbark Lane until the youngest child reaches the age of 18 at which time the house shall be sold. It may be sold at an earlier date at the option of the defendant. Whenever it is sold, the net proceeds shall be distributed as follows: fifty-five (55%) per cent to the defendant and forty-five (45%) per cent to the plaintiff.
5. The house at Shoreham Terrace shall also be sold when the youngest child reaches the age of 18 or prior to that date at the option of the plaintiff. Whenever that house is sold, the net proceeds shall be distributed as follows: fifty (50%) per cent to the plaintiff and fifty (50%) per cent to the defendant. In the interim, the plaintiff may collect the CT Page 8705 rents from the Shoreham Terrace property and use them for the maintenance of that property. He has the option of evicting the tenant and using the property as his residence.
6. The other assets of the parties consist of the following: $10,400.00 in bank accounts and money markets; $36,200.00 in IRA's, $9,500.00 from the Michigan Land Refund, $2,769.00 from an anticipated IRS refund or a total of $58,869.00. Of that amount, the plaintiff shall give to the defendant $35,021.00 as follows: $10,400.00 in the bank accounts and money market funds, $18,100.00 from the IRA's, $1,769.00 from the income tax refund and $4,750.00 from the land in Michigan refund. When that amount is added to half of the equity in Shoreham and fifty-five per cent of the equity in Shagbark, it will total $170,192.00 which represents fifty-five per cent of the total assets of the parties.
 The plaintiff is ordered to take whatever steps are necessary and sign whatever papers are necessary to transfer to the defendant the assets enumerated above in the proportion in which the court has ordered them provided to her.
MEDICAL AND LIFE INSURANCE
7. The plaintiff shall maintain his present medical coverage for the benefit of the children until each child attains the age of 18, dies, marries or becomes emancipated.
8. The defendant shall have the right to convert her existing group medical insurance under the plaintiff's employment under COBRA to an individual plan at her sole expense. The plaintiff will cooperate with the defendant regarding this conversion.
9. The parties shall equally pay for uninsured medical expenses for the minor children. These include medical, surgical, hospital, psychiatric, dental, optical and nursing expenses and the cost of prescriptive drugs or other prescribed medicine or medical supplies or equipment.
10. The plaintiff shall name the defendant primary beneficiary of his existing $10,000.00 of life insurance for so long as he is obligated to pay the wife alimony. Should the defendant die before the youngest child reaches the age of 18, the children should be named beneficiaries. CT Page 8706
PERSONAL PROPERTY
11. The defendant shall retain the 1984 Oldsmobile and the plaintiff shall retain the 1987 Isuzu.
12. The defendant shall retain ownership of the household furniture and furnishings except those items agreed upon by the parties. Should there be any disagreement relating to the division of the furniture and furnishings, they may refer it to the Family Relations Office for mediation.
CUSTODY AND SUPPORT
13. Parties shall have joint legal custody of the minor children and the children shall make their primary residence with the defendant. The party with whom the child is in residence shall make all day-to-day decisions pertaining the child's health, education and welfare.
14. The plaintiff shall have reasonable visitation as agreed upon by the parties. Should any disagreement arise relating to visitation, the matter shall be referred to the Family Relations Office for mediation.
15. The plaintiff shall pay to the defendant as support for the minor children the amount of $387.00 per week.
16. A conditional wage execution shall issue. The appropriate waiver having been executed by both parties.
17. The plaintiff may take Sarah as a dependent on his income tax and the defendant may take Laura as a dependent on hers.
ATTORNEY'S FEES
18. Each party shall be responsible for his or her attorney's fees.
MARGARET C. DRISCOLL STATE TRIAL REFEREE